Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| *WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY BUT SOLELY AS TRUSTEE FOR INANCIAL OF ACQUISITION TRUST 2018-HB1*<br>**Apelado**<br><br>V.<br><br>SUCN. DANIEL RIVERA RUÍZ compuesta por NELSON DANIEL RIVERA COSME, JOHANNIE RIVERA COSME; JOHN DOE como posibles herederos desconocidos; ESTADOS UNIDOS DE AMERICA; CTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES<br>**Apelante** | KLAN202401018 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Civil. Núm. MZ2018CV00577<br><br>Sobre:<br><br>Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 17 de diciembre de 2024.

El 1 de noviembre de 2024, la sucesión del Sr. Daniel Rivera Ruiz compuesta por el Sr. Nelson Daniel Rivera Cosme y la Sra. Johannie Rivera Cosme (en conjunto, la sucesión Rivera o los apelantes) comparecieron ante nos mediante un recurso de *Apelación* y solicitaron la revisión de una *Sentencia* que se emitió el 23 de septiembre de 2024 y notificó el 2 de octubre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Segunda Demanda Enmendada*. En consecuencia, ordenó, a solicitud de parte, la venta en pública subasta de la propiedad objeto de la

presente acción para satisfacer la deuda acumulada por la parte apelante.

Por los fundamentos que expondremos a continuación, **revocamos** el dictamen recurrido.

I.

El 30 de septiembre de 2019, Finance of America Reverse LLC (Finance o apelado), presentó una *Segunda Demanda Enmendada* sobre ejecución de hipoteca en contra de la sucesión Rivera, Estados Unidos de América y el Centro de Recaudaciones de Ingresos Municipales.[1] Alegó que, el 21 de octubre de 2013, VIG Mortgage Corp., le otorgó un préstamo hipotecario al Sr. Daniel Rivera Ruiz (señor Rivera o causante) que garantizó, mediante una hipoteca revertida, por la suma de $240,000.00, con intereses al 3.174% anual, una propiedad ubicada en el municipio de Mayagüez. Además, sostuvo que dicho gravamen disponía que el señor Rivera se obligó al pago de costas, gastos y honorarios de abogado equivalentes al 10% del valor principal de la hipoteca en caso de una reclamación judicial. Mencionado lo anterior, Finance adujo que era dueño del pagaré antes descrito por endoso, y que no había endosado, vendido, cedido o de alguna otra forma negociado el mismo. En este sentido, indicó que el señor Rivera falleció por lo que el préstamo garantizado por la hipoteca revertida se encontraba vencido y pagadero. Por lo que argumentó que la parte apelante le adeuda la suma global vencida, líquida y exigible incluyendo intereses y otros gastos acumulados hasta el 30 de noviembre de 2018 de $129,088.35 y los cuales continuaban acumulándose. Así como, la cantidad estipulada para costas, gastos y honorarios de abogado en caso de una reclamación judicial. A tales efectos, le solicitó al TPI que ordenara la venta en pública subasta del bien

---

[1] Véase apéndice del apelante, págs. 140-151.

inmueble hipotecado para satisfacer las deudas acumuladas del señor Rivera.

En respuesta, el 15 de octubre de 2019, la parte apelante presentó su *Contestación a Segunda Demanda Enmendada.*[2] Mediante esta, negó la mayoría de las alegaciones en la demanda. Además, alegó que el señor Rivera padecía de Alzheimer al momento de otorgar la escritura de hipoteca por lo cual adolecía de falta de capacidad.

Tras varios trámites procesales, el 10 de abril de 2023, la parte apelante presentó una *Enmendada Moción de Sentencia Sumaria.*[3] En primer lugar, enumeró tres (3) hechos que, a su juicio, no estaban en controversia. Luego, argumentó que el gravamen hipotecario otorgado fue nulo, toda vez que la escritura de hipoteca fue otorgada por una persona mentalmente comprometida por adolecer de Alzheimer. Además, puntualizó que el señor Rivera fue diagnosticado de Alzheimer previo a este otorgar la escritura de hipoteca. A esto añadió que, el causante era una persona de escasa preparación educativa y que, en conjunto con su enfermedad, existían elementos cruciales para decretar la nulidad del gravamen hipotecario.

Así las cosas, el 21 de junio de 2023, Finance presentó su *Oposición a Moción de Sentencia Sumaria.*[4] Mediante esta, argumentó que la parte apelante incumplió con los requisitos exigidos por la Regla 36.3 de Procedimiento Civil de 2009, lo cual impedía que el TPI la considerara. A su vez, señaló que los documentos que acompañaban la solicitud de sentencia sumaria eran inadmisibles en evidencia, a saber, los récords médicos del causante y la certificación firmada por una alegada Dra. María

---

[2] Id., págs. 152-153.
[3] Id., págs. 154-189.
[4] Id., págs. 190-200.

Jordán González. Ello, en vista de que no fueron autenticados conforme a la Regla 901 de Evidencia. A esto añadió que, la sucesión Rivera tampoco demostró la disponibilidad y cualificación de la declarante. Por otra parte, sostuvo que, como se pretendía cuestionar el estado mental del señor Rivera al momento de otorgar la escritura, se requería celebrar una vista evidenciaría. Además, arguyó que, como norma general en nuestro ordenamiento jurídico existía una presunción de sanidad o capacidad mental. A tales efectos, solicitó al TPI que no acogiera la solicitud de sentencia sumaria y ordenara la continuación de los procedimientos.

Evaluadas las posturas de ambas partes, el 23 de septiembre de 2024, el TPI emitió una *Sentencia* que se notificó el 2 de octubre de 2024.[5] En primer lugar, consignó las siguientes determinaciones de hechos:

> 1. El 21 de octubre de 2013, DANIEL RIVERA RUIZ, emitió un Pagaré garantizado por hipoteca revertida, relacionada más adelante, a favor de VIG Mortgage Corp., o a su orden, por la suma principal de $240,000.00, devengando intereses a razón de 3.174% anual hasta su total y completo pago con vencimiento el 22 de junio de 2088, de no haberse declarada vencida la totalidad de la deuda con anterioridad por incumplimiento con los términos y condiciones de la hipoteca, y un 10% del original del principal por concepto de costas y gastos y honorarios de abogado en caso de ser necesaria la reclamación judicial, previo a su vencimiento, otorgada ante el Notario Gary E. Biaggi Silva mediante su escritura número 412, en adelante el "***Pagaré***".
>
> 2. WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY BUT SOLELY AS TRUSTEE FOR FINANCE OF AMERICA STRUCTURED SECURITIES ACQUISITION TRUST 2018-HB1, es el tenedor del Pagaré. El mismo no ha sido endosado para su cancelación, ni cedido, ni negociado por WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY BUT SOLELY AS TRUSTEE FOR FINANCE OF AMERICA STRUCTURED SECURITIES ACQUISITION TRUST 2018-HB1.

---

[5] Id., págs. 201-213. Es preciso señalar que, examinada la oposición de sentencia sumaria de la parte apelada y la sentencia del TPI, estamos ante un proyecto de sentencia firmado por el TPI. Ahora bien, el Tribunal Supremo ha expresado que los proyectos de sentencia, de por sí, no son mala práctica, pero los jueces de instancias no pueden firmar los mismos a ciegas y deben ser minuciosos al evaluar el contenido de estos. *Nieves Díaz v. González Massas*, 178 DPR 820. 853-854 (2010).

3. DANIEL RIVERA RUIZ, otorgó la escritura número 412, ante el Notario Gary E. Biaggi Silva, sobre Primera Hipoteca, para garantizar el Pagaré antes descrito, gravando la siguiente propiedad:

---"URBANA: Solar radicado en Barrio Mayagüez Arriba del término municipal de Mayagüez con una cabida superficial de mil doscientos noventa y ocho punto veinticinco (1,298.25) metros cuadrados. Colinda por el NORTE en cuarenta y tres punto veinticinco (43.25) metros con la finca principal; por el SUR en cuarenta y dos (42.00) metros con el solar "D" a segregarse; por el ESTE en treinta (30.00) metros con Sucesión Faustino Rivera y por el OESTE en treinta (30.00) metros con la calle Flor de Valle. Enclava casa para residencia, toda de concreto, que constara de tres dormitorios, sale-comedor, cocina, baño y marquesina."---------------------
-----------------------------
---Finca número 19,962, inscrita al folio 276 del tomo 713 de Mayagüez, Registro de la Propiedad de Mayagüez.---------------------
---La Hipoteca Revertida consta inscrita al folio 17 del tomo 1532 de Mayagüez, Registro de la Propiedad de Mayagüez, inscripción 9ª.------

4. El deudor hipotecante DANIEL RIVERA RUIZ falleció, por lo cual el préstamo garantizado por la Hipoteca se encuentra vencido y pagadero según las obligaciones a las cuales se sometió la parte demandada en los documentos suscritos para que VIG Mortgage Corp., le concediera el préstamo, según el Párrafo Quinto inciso 9 (a) (i) de la Hipoteca Revertida el cual reza: "*Fundamentos para Acelerar la Deuda: (a) Vencida y Pagadera. El Acreedor Hipotecario podrá requerir el pago total inmediato de todas las sumas garantizadas por esta primera hipoteca si: (i) Un Deudor muere y la propiedad no es la residencia principal de al menos un Deudor sobreviviente*".

5. Por concepto del referido préstamo hipotecario garantizado por la Hipoteca Reverse, la propiedad antes descrita garantiza el pago WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT INDIVIDUALLY BUT SOLELY AS TRUSTEE FOR FINANCE OF AMERICA STRUCTURED SECURITIES ACQUISITION TRUST 2018-HB1, la suma de $92,885.67 por concepto de principal, más la suma de $43,765.61 en intereses acumulados al 5 de octubre de 2022, y los cuales continúan acumulándose a razón de 3.174% anual hasta su total y completo pago; $17,348.49 de seguro hipotecario; $3,293.45 en

6. Las cantidades antes mencionadas se encuentran determinadas, vencidas, líquidas y exigibles.

Conforme a las determinaciones de hechos antes expuestas y el derecho aplicable, el TPI concluyó que la sucesión Rivera incumplió con los incisos 1, 2, 3, y 4 de la Regla 36.3(a) de

Procedimiento Civil de 2009, *supra*. Explicó que, la parte apelante no desglosó los hechos en párrafos enumerados ni especificó la prueba admisible en evidencia que lo apoyara. De igual modo, resolvió que tampoco contenía una breve exposición de las partes, ni los asuntos en controversias y que carecía de un señalamiento de la causa de acción o reclamación respecto a la cual se solicitaba la sentencia sumaria. Por otra parte, el TPI expresó que la sucesión Rivera incumplió con el estándar de suficiencia que exigía la Regla 901 de Evidencia. Indicó que, los alegados récords médicos del señor Rivera y la certificación firmada por una alegada Dra. María Jordán González, presentados por la parte apelante, eran inadmisibles en evidencia. Explicó que, la sucesión no acreditó ningún fundamento para hacer la prueba presentada admisible. Además, puntualizó que tampoco demostró la disponibilidad y cualificación de la declarante. A su vez, determinó que existía una presunción de sanidad o capacidad mental que no se había rebatido en el caso de epígrafe. Por lo cual, declaró Ha Lugar la *Segunda Demanda Enmendada*. En consecuencia, ordenó lo siguiente:

> A solicitud de parte, la venta en pública subasta de la propiedad objeto de la presente acción para satisfacer la suma de $92,885.67 por concepto de principal, más la suma de $43,765.61 en intereses acumulados al 5 de octubre de 2022, y los cuales continúan acumulándose a razón de 3.174% anual hasta su total y completo pago; $17,348.49 de seguro hipotecario; $3,293.45 en contribuciones; $6,021.00 de seguro contra riesgo; $625.00 de tasaciones; $1,160.00 de inspecciones; $4,368.30 de adelantos de honorarios de abogado; más la cantidad de 10% del pagare original en la suma de $24,000.00, para gastos, costas y honorarios de abogado. A tenor con la Regla 44.3 de Procedimiento Civil se condena a la parte demandada a pagar intereses aplicables sobre el importe de la presente sentencia incluyendo costas y honorarios de abogado, desde esta fecha y hasta que sea satisfecha.

Inconforme, el 1 de noviembre de 2024, la sucesión Rivera presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

**1. Erró el Honorable Tribunal de Instancia al dictar sentencia sumaria sin que la parte Demandante pasara prueba alguna para refutar la Alegación Afirmativa de que el Deudor Hipotecario el Causante, Daniel Rivera Ruiz, estaba diagnosticado con la enfermedad cognitiva de demencia desde el 2011, previo al otorgamiento de la escritura 412 del 21 de octubre del 2013 sobre Constitución de Hipoteca Revertida ante el Notario Público Gary Biaggi Silva.**

**2. Erró el Honorable Tribunal de Instancia al incluir, como parte de la Sentencia Sumaria dictada en el caso de epígrafe, dos partidas en concepto de honorarios de abogado. Una partida equivalente al 10% de la cuantía principal original expresada en el pagare hipotecario, por la suma de $24,000.00 (El pagare hipotecario revertido es por la cuantía principal de $240,000.00, a pesar de solo desembolsarse $95,585.61 al Deudor Hipotecario difunto Daniel Rivera Ruiz, y el mismo contiene cláusula de crédito ejecutivo de 10% para cubrir costas, gastos y honorarios legales en caso de radicación de Demanda de cobro de dinero y/o ejecución de hipoteca), así como otra partida dictada por la suma de $4,368.30 en concepto de adelantos de honorarios de abogados.**

**3. Erró el Honorable Tribunal de Primera Instancia al no tomar en consideración el expediente médico del Deudor Hipotecario Causante Daniel Rivera Ruiz y el informe emitido por la Dra. María Jordán González rechazándolo de plano, expresando que el mismo es inadmisible en evidencia, de acuerdo a la Regla 901 de Evidencia, y que la misma lo que contenía era una "escueta certificación firmada por una alegada Dra. María Jordán González", insinuando mediante su lenguaje prejuicio y desprecio a la labor de una galena que es una neuróloga "Board Certified" de la "American Board of Psychiatry and Neurology", así como de la Academia Puertorriqueña de la Neurología.**

Atendido el recurso, el 20 de noviembre de 2024, emitimos una *Resolución* concediéndole a la parte apelada hasta el 9 de diciembre de 2024 para presentar su postura en cuanto el recurso. Oportunamente, el 9 de diciembre de 2024, la parte apelada presentó su *Alegato de la parte apelada* y negó la comisión de los errores imputados.

Con el beneficio de la comparecencia de ambas partes procedemos a resolver el asunto ante nos. *Veamos.*

II.

En esencia, el principio rector de las Reglas de Procedimiento Civil es proveerles a las partes envueltas en un pleito legal, una solución justa, rápida y económica en todo procedimiento. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R.1. El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, hace viable este objetivo en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita.

Conforme a la Regla 36.3 (e) de Procedimiento Civil, *supra,* se dictará sentencia sumaria "si las alegaciones, deposiciones, contestaciones e interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y, además, si el derecho aplicable así lo justifica". A estos efectos, el foro judicial tiene la potestad para disponer de asuntos pendientes sin la necesidad de celebrar un juicio, esto debido a que lo que restaría sería aplicar el derecho a los hechos no controvertidos. *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 299 (2012).

Es menester destacar que, solo procede dictar sentencia sumaria cuando surge claramente que el promovido no puede prevalecer y que el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Mejías et al. v. Carrasquillo et al.,* supra, pág. 299. Por lo tanto, no procede dictar sentencia sumaria cuando no existe una clara certeza sobre todos los hechos materiales en la controversia. Íd. Aun así, "[c]ualquier duda no es suficiente para derrotar una moción de sentencia sumaria. Tiene que ser una duda que permita concluir que existe

una controversia real y sustancial sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión*, 178 DPR 200, 214 (2010).

En reiteradas ocasiones, el Tribunal Supremo ha establecido que se considera como un hecho esencial y pertinente, aquel que "puede afectar el resultado de la reclamación acorde con el derecho sustantivo aplicable". Íd., pág. 213. Dicho esto, para que proceda una moción de sentencia sumaria no tan solo se requiere que haya una inexistencia de hechos en controversia, sino que también la sentencia que dicte el foro judicial tiene que proceder conforme al derecho sustantivo aplicable.

En particular, la Regla 36.2 de Procedimiento Civil, *supra,* permite que cualquier parte presente una moción, basada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". *Municipio de Añasco v. ASES et al.,* 188 DPR 307, 310 (2013).

Por su parte, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Por el contrario, esa persona viene obligada a enfrentar la moción de su adversatario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013). Específicamente, la Regla

36.3 de Procedimiento Civil, *supra,* expone los criterios que debe cumplir la parte que se opone a la moción de sentencia sumaria.

Al amparo de dicha regla, la oposición a la solicitud de sentencia sumaria el promovido debe, como parte de su carga desglosar los hechos sobre los que aduce que no existe controversia, y, además para cada uno de ellos debe especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya. Asimismo, cabe destacar que, la Regla 36.5 de Procedimiento Civil, *supra,* establece que las declaraciones juradas para sostener u oponerse a una moción de sentencia sumaria que contienen solo conclusiones, sin hechos específicos que las apoyen, no tienen valor probatorio, por lo que son insuficientes para demostrar la existencia de lo que allí se concluye.

Según dispone el caso de *Mejías et al. v. Carrasquillo et al.,* supra, pág. 300 citando a: *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 280-281 (1990), "al evaluar una moción de sentencia sumaria, los jueces no están limitados por los hechos o documentos que se aduzcan en la solicitud, sino que deben considerar todos los documentos en autos, sean o no parte de la solicitud de sentencia sumaria de los cuales surjan admisiones hechas por las partes".

En síntesis, no procede dictar sentencia sumaria cuando: (1) existen hechos materiales y esenciales en controversia; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción de sentencia sumaria una controversia real sobre algún hecho material y esencial; (4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra,* 186 DPR 713, 757 (2012); *Ramos Pérez v. Univisión, supra,* pág. 217. Además, no se debe adjudicar un caso sumariamente cuando existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o

cuando el factor credibilidad es esencial y está en disputa. Íd. pág. 219.

Ahora bien, según *Verá v. Dr. Bravo,* 161 DPR 308, 334-335 (2004) este Foro Apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sin embargo, el Tribunal Supremo especifica que, al revisar la determinación de primera instancia sólo podemos considerar los documentos que se presentaron ante el TPI. Íd. Lo anterior, debido a que "las partes no pueden añadir en apelación *exhibits,* deposiciones o affidávits que no fueron presentadas oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo". Íd. Además, sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. Íd. Es decir, no podemos adjudicar los hechos materiales y esenciales en disputa, ya que esta tarea le corresponde al Tribunal de Primera Instancia. Íd.

Por otro lado, en *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015), el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el Tribunal de Primera Instancia aplicó

correctamente el derecho. *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

III.

En su primer señalamiento de error, la parte apelante sostuvo que, erró el TPI al dictar sentencia sumaria sin que Finance pasara prueba alguna para refutar la alegación de que el señor Rivera estaba diagnosticado con Alzheimer desde el 2011, previo a otorgar la hipoteca revertida. Por otra parte, en su segundo señalamiento de error, argumentó que el TPI erró al incluir, como parte de la sentencia sumaria dictada, dos partidas en concepto de honorarios de abogado. Expresó, que el TPI concedió una partida equivalente al 10% de la cuantía principal del pagare hipotecario, por la suma de $24,000.00, y otra partida por la suma de $4,368.30 en concepto de adelantos de honorarios de abogado. Por último, en su tercer señalamiento de error, argumentó que el TPI erró al no considerar el expediente médico del señor Rivera ni la certificación emitida por la Dra. María Jordán González por estas ser inadmisibles conforme a la Regla 901 de Evidencia. A su vez, adujo que, por la prueba presentada ante el foro sobre la capacidad mental del causante, se requería que el TPI celebrara una vista evidenciaria para determinar si el señor Rivera tenía capacidad para otorgar la escritura de hipoteca.

Por su parte, Finance argumentó que en nuestro ordenamiento jurídico existía una presunción de sanidad o capacidad mental. A esto añadió que, en el pleito de epígrafe, la sucesión Rivera no presentó prueba para rebatir la presunción de capacidad del causante al momento de otorgar la escritura. Del mismo modo, alegó que tampoco demostró documento judicial que acreditara la alegada incapacidad. A su vez, arguyó que, la parte apelante incumplió con el estándar de suficiencia que exigía la Regla 901 de Evidencia para autenticar prueba de manera que fuese

admisible y que pudiese ser considerada por el tribunal. Indicó que las pruebas sometidas fueron copias ininteligibles de unos alegados récords médicos del causante y una sucinta certificación firmada por la Dra. Maria Jordán González. Además, señaló que no se cuestionó la capacidad de la doctora, sino que lo que planteaba Finance era que la prueba sometida era inadmisible y no rebatía la presunción de capacidad mental del señor Rivera. Por último, argumentó que las partidas de honorarios concedidas estaban fundamentadas en el contrato suscrito entre las partes. Expresó que, los honorarios pactados en el contrato fueron razonables, por lo cual no existía razón para intervenir con lo expresamente pactado.

Previo a discutir los señalamientos de error previamente reseñados al principio de este acápite, cabe precisar que, al momento de revisar la concesión de una sentencia sumaria, nos encontramos en la misma posición que el TPI. A tono con esta norma, debemos evaluar, en primer lugar, si al presentar la solicitud de sentencia sumaria y su oposición las partes cumplieron con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra,* y con los dispuestos en *SLG Zapata-Rivera v. J.F. Montalvo,* supra. Al evaluar la solicitud de sentencia sumaria presentada por la parte apelante juzgamos que la misma incumplió con los referidos requisitos, por lo cual, el TPI no estaba obligado a considerar el pedido. Mencionado lo anterior, procederemos a discutir los errores señalados por la parte apelante.

Por estar íntimamente relacionado, discutiremos el primer y tercer señalamiento de error en conjunto. Es preciso señalar que, en el caso que nos ocupa el TPI rechazó la solicitud de sentencia sumaria presentada por la parte apelante por ésta incumplir con los requisitos de la Regla 36.3 de Procedimiento Civil, *supra.* No obstante, determinó que los hechos planteados en la causa de acción instada por Finance no estaban en controversia por

encontrar apoyo en los documentos que obraban en el expediente. A tales efectos, el TPI realizó seis (6) determinaciones de hechos que encontró probado. Ahora bien, según surge de la solicitud de sentencia sumaria presentada por la sucesión Rivera, esta alegó que el causante adolecía de Alzheimer desde el 2011, previó a otorgar la escritura de interés en el presente caso. Sin embargo, el TPI no atendió dicha alegación, rechazó la misma y la documentación en apoyo, en vista de que no era admisible a tenor con la Regla 901 de Evidencia.

Dicho esto, existe una presunción de sanidad o capacidad mental en nuestro ordenamiento jurídico. *Rivera y Otros v. Bco. Popular*, 152 DPR 140, 157 (2000). Sin embargo, esta presunción se puede rebatir mediante la presentación de prueba concluyente en contrario. *Jiménez v. Jiménez*, 76 DPR 718, 732 (1954). A tal efecto, el Tribunal Supremo ha expresado que la condición de Alzheimer constituye un cuestionamiento de la capacidad mental de una persona. *Rivera y Otros v. Bco. Popular, supra*, pág. 160.

Mencionado lo anterior, evaluadas las determinaciones de hechos que realizó el TPI en su *Sentencia* consideramos que no son suficiente para emitir un dictamen en el caso que nos ocupa. **Existe controversia real sobre el hecho material esencial si el señor Rivera tenía capacidad legal al momento que otorgó la escritura de hipoteca revertida que se debe dirimir en juicio.**

Por el momento, no atenderemos el segundo señalamiento de error, en vista de que estamos dejando sin efecto la sentencia del TPI. Ante ello, ordenamos la continuación de los procedimientos conforme a lo aquí resuelto.

IV.

Por los fundamentos antes expuestos, ***revocamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones